J-S28005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| REGINA MENSAH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NATIONAL BOARD OF MEDICAL | : | No. 564 EDA 2021 |
| EXAMINERS | : | |

Appeal from the Order Entered February 9, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 190201342

BEFORE:   BOWES, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                **FILED OCTOBER 1, 2021**

Regina Mensah appeals from the February 9, 2021 order granting summary judgment in favor of the National Board of Medical Examiners ("NBME").  We affirm.

Dr. Mensah commenced this action on February 14, 2019, by filing a *praecipe* for writ of summons and a motion for leave to take pre-complaint discovery.  In the latter, she sought the "recorded answers" and the "correct answers" on two of the United States Medical Licensing Examinations ("USMLE") she failed in 2018.  The request was calculated to determine whether NBME made errors in grading her examinations that she believed she

_____

[*] Retired Senior Judge assigned to the Superior Court.

had passed. NBME provided Dr. Mensah's answers and the correct answers to her counsel, counsel moved to withdraw, and the court granted the motion.

After several continuances, Dr. Mensah filed a *pro se* complaint against NBME on January 31, 2020. She averred therein that she is a Canadian citizen and that she graduated from All Saints University School of Medicine in Dominica in the Caribbean. Before she could pursue her medical residency and accreditation in the United States, she was required to pass Steps 1 and 2 of the three-step USMLE. Dr. Mensah pled that she passed Step 2 on May 16, 2013, but had been unsuccessful in passing Step 1 on four attempts, the latest being March 8, 2018. She alleged that by "registering and paying for the examination and fulfilling all requirements to sit for the examination, [she] and [NBME] entered into a Contract" that obligated NBME to permit her to review the results of the examination. By refusing to permit her to review her examination, Dr. Mensah alleged that NBME had breached that contract. She also sought declaratory relief based upon allegations that NBME was negligent in the scoring of the exams, the results were unreliable, and that it breached its duty to "provide true and valid raw scores that are meaningful and authenticated." *Id*. at ¶ 18(h).

NBME filed an answer to the complaint admitting that it is a non-profit organization that "develops and provides for the administration of the multi-step USMLE that medical students and graduates of U.S. and foreign medical schools must pass if they wish to practice in the United States." Answer,

2/24/20, at ¶¶ 3-5. It pled that Dr. Mensa failed to pass Step 1 on five occasions, and that although she passed the CS portion of Step 2, she failed Step 2 CK on May 30, 2016. *Id*. at ¶ 9. NBME averred that at Dr. Mensah's request, NBME rechecked two of the exams and concluded that there was no error in the scoring. Additionally, it provided Dr. Mensah with her raw answers and the correct answers.

NBME denied the existence of any contract with Dr. Mensah that permitted her to obtain the proprietary test questions that it spent "enormous resources to create, verify, test, and analyze, and for which NBME maintains rigorous security to protect the integrity of the exam" for purposes of obtaining an independent review. *Id*. at ¶¶ 13-17. In new matter, NBME pled, *inter alia*, that Dr. Mensah's scores were entirely consistent with her poor performance on self-assessments that she took at home prior to the exams. New Matter, 2/24/20, at ¶ 48.

NBME filed a motion for judgment on the pleadings, which was denied by order entered June 23, 2020. At the conclusion of discovery, NBME filed a motion for summary judgment in which it maintained that it had no express or implied contractual obligation to provide the actual test questions and answers to Dr. Mensah for independent review. It offered evidence that its testing methodology was reliable and attacked the truth of Dr. Mensah's representations about her academic record. NBME also substantiated that, at Dr. Mensah's request, it conducted score rechecks of her May 30, 2016 Step

2 CK exam and her August 31, 2017 Step 1 exam and reported to Dr. Mensah that it found no errors in scoring and that her scores remained unchanged. Motion for Summary Judgment, 11/2/20, at Exhibit J.

On December 3, 2020, Eric Winter, Esquire entered his appearance on Dr. Mensah's behalf and filed a response in opposition to NBME's summary judgment motion and memorandum that same day. However, Dr. Mensah did not append any supporting documentation to her response.

The trial court entered an order granting summary judgment in favor of NBME on February 9, 2021, and the docket indicates that Pa.R.C.P. 236 notice was sent electronically to counsel for all parties. Dr. Mensah filed an appeal to this Court on March 8, 2021. By order entered March 8, 2021, the trial court ordered Dr. Mensah to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one days from the entry of the order. The court also advised that failure to comply with the order would result in the waiver of all issues on appeal. According to the docket, Rule 236 notice of the Rule 1925(b) order issued on March 12, 2021, but Dr. Mensah did not file a Rule 1925(b) concise statement. Consequently, the trial court issued its Rule 1925(a) opinion on April 13, 2021, in which it recommended that this Court dismiss the appeal as all issues were waived due to Dr. Mensah's failure to file a Rule 1925(b) concise statement.

Dr. Mensah filed a Motion to Reconsider and Issue Opinion Due to Clerical/Computer Error on April 19, 2021. She represented therein that she

was not served with the Rule 1925(b) order and asked the court to accept a late-filed concise statement and issue an opinion. *Id*. at ¶ 15. By order dated April 20, 2021, the trial court denied reconsideration and appended a computer printout purporting to show that emails were sent to Attorney Winter and Dr. Mensah on March 12, 2021. Order, 4/20/21, at Exhibit A.[1]

On July 20, 2021, this Court issued a rule directing Dr. Mensah to show cause why the within appeal should not be dismissed due to the waiver of all issues for failure to file a timely Rule 1925(b) concise statement. Counsel for Dr. Mensah filed a timely response stating that he did not receive the emailed Rule 1925(b) order and that Dr. Mensah received the email but could not access the link containing the order. Counsel represented that Dr. Mensah advised counsel of the email but when he checked the docket on March 15, 2021, it did not reflect any Rule 1925(b) order. Counsel maintained that he

---

[1] As Dr. Mensah's motion for reconsideration was filed in the trial court on April 19, 2021, more than thirty days after the order appealed from and after the filing of a notice of appeal, the trial court lacked jurisdiction to entertain it. *See* 42 Pa.C.S. § 5505 (providing that except as otherwise prescribed, a court may modify or rescind any order within thirty days after its entry if no appeal has been taken). Furthermore, because the certified record was transmitted to this Court on April 13, 2021, the motion for reconsideration is not reflected on the docket in the certified record. The same is true of the trial court's April 20, 2021 order denying reconsideration and attaching a computer printout seemingly indicating that both counsel and Dr. Mensah were sent the Rule 1925(b) order via email on March 12, 2021. However, because these documents are contained in the reproduced record and NBME does not dispute their authenticity, we may acknowledge their existence. *See, e.g.*, *Commonwealth v. Holston*, 211 A.3d 1264, 1276 (Pa.Super. 2019) ("[W]here the accuracy of a document is undisputed and contained in the reproduced record, we may consider it.").

only became aware of the order when the trial court later issued its opinion. He averred that he immediately filed a motion for reconsideration citing the lack of service, but the trial court denied the motion and attached "an unverified document." Response to Rule to Show Cause, 7/26/21, at 1.

On August 10, 2021, this Court discharged the rule to show cause based on Dr. Mensah's response and advised the parties that the issue "may be revisited by the panel assigned to decide the merits of this appeal." Order, 8/10/21. Dr. Mensah raises two issues for our review:

[1.] Whether the Lower Court erred in finding a waiver of the issues where Appellant was not served with an order requiring a concise statement be filed?

[2.] Whether the Lower Court erred in granting summary judgment?

Appellant's brief at 4.

Preliminarily, we must determine whether any issues are preserved for review. In **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998), our Supreme Court established the bright-line rule that "failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in automatic waiver of the issues raised [on appeal]." The rule applies even if the appellant served the Rule 1925(b) statement on the trial judge who subsequently addressed the merits in its opinion. **See Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 225 (Pa.Super. 2014).

There are exceptions to the rule, however. For instance, when an appellant learned for the first time upon receipt of the trial court opinion that

a Rule 1925(b) order issued and that she failed to comply, we examined the docket and other documents to determine whether the order was served. **See**

**e.g.**, **Commonwealth v. Hooks**, 921 A.2d 1199 (Pa.Super. 2007) (remanding for filing of a Rule 1925(b) concise statement where our review of the docket failed to reflect that order was served on appellant). **See also** Pa.R.A.P. 1925(b)(2) (Official Note and cases cited therein). Additionally, Rule 1925(c)(2) permits remand for the filing of a Rule 1925(b) statement *nunc pro tunc* upon application of the appellant to the appellate court and for good cause shown. **See** Pa.R.A.P. 1925(c)(2) ("Upon application of the appellant and for good cause shown, an appellate court may remand in a civil case for the filing *nunc pro tunc* of a Statement or for amendment or supplementation of a timely filed and served Statement and for a concurrent supplemental opinion.").

The docket in the instant case indicates that Rule 236 notice of the Rule 1925(b) order was given. The computer printout relied upon by the trial court in denying reconsideration indicates that emails were sent to Dr. Mensah and her counsel, as well as counsel for NBME.

While Dr. Mensah technically did not file an application seeking remand for the filing of a Pa.R.A.P. 1925(b) concise statement *nunc pro tunc*, we will treat her response to the rule to show cause and request for remand in her appellate brief as such an application. Counsel represented therein that neither he nor Dr. Mensah received the emailed order. We find some support

for Dr. Mensah's position in NBME counsel's cryptic representation that he "received email notice from the Court on Friday, March 12, 2021, at 4:33 p.m. that an Order had been entered, and obtained a copy of the Order early the following week." Appellee's brief at 30 n.10. The foregoing tends to add credence to Dr. Mensah's representation that the order was not attached to the email she received from the court. Counsel for Dr. Mensah also pointed out that there were certain irregularities in the March 12, 2021 order, namely, that it did not bear a filed stamp or case ID or barcode like every other order issued in the case. Appellant's brief at 6. Our review of the certified record confirms these anomalies on the face of the Rule 1925(b) order. Hence, on the record before us we find sufficient good cause shown to excuse Dr. Mensah's failure to timely file a Rule 1925(b) statement.

In addition, there is a deficiency in the court's Rule 1925(b) order. The trial judge did not specify how and where service upon him should be effectuated. **See** Pa.R.A.P. 1925(b)(3)(iii) (providing that the order directing the filing and service of the order shall specify "that the Statement shall be served on the judge pursuant to paragraph (b)(1) and both the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement. In addition, the judge may provide an email, facsimile, or other alternative means for the appellant to serve the Statement on the judge"). We decline to find waiver where the trial court did not strictly adhere to the requirements set forth in Rule 1925(b)(3). **See**

***Berg v. Nationwide Mut. Ins. Co., Inc***., 6 A.3d 1002, 1007-8 (Pa. 2010) (finding based on the Comment to Rule 1925(b) that "compliance by all participants, including the trial court, is required if the amendments and the rule are to serve their purpose"). ***Accord***, ***Greater Erie Indus. Dev. Corp***., ***supra*** at 225-26; ***Commonwealth v. Jones***, 193 A.3d 957, 961 (Pa.Super. 2018).

Dr. Mensah requests that, as there was no proper service of the order, we remand this matter to allow for filing of a 1925(b) statement and opinion. Appellant's brief at 8. She maintains that "this Court cannot properly address whether the Lower Court properly ruled on the Summary Judgment without knowing the reasoning of the Lower Court" and that "remand with the ability to file a concise statement and obtain an opinion is the appropriate remedy." ***Id***. at 10. NBME counters that since Dr. Mensah "filed a baseless lawsuit, failed to undertake any discovery, and had no evidence of record to cite in her favor to establish a *prima facie* case in response to NBME's motion for summary judgment," we should "affirm the trial court's grant of summary judgment even without a substantive trial court opinion explaining its reasoning." Appellee's brief at 5.

We see no need to remand for the filing of a Rule 1925(b) statement and supplemental trial court opinion on the record before us for the following reasons. In her motion for reconsideration, Dr. Mensah stated that the only issue she intended to raise on appeal was the propriety of the trial court's

grant of summary judgment. *See* Motion for Reconsideration, at ¶ 14. Indeed, she has briefed that issue on appeal. As we apply the same standard of review as the trial court and need not defer to its reasoning, the lack of an opinion will not impede our review. *See Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010).

In reviewing the grant of summary judgment, we are mindful of the following.

> [S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt. Because the issue here, namely whether there are genuine issues of material fact, is a question of law, our standard of review is *de novo* and our scope of review is plenary.

*See In re Risperdal Litig.*, 223 A.3d 633, 639 (Pa. 2019) (citations and quotation marks omitted).

> [O]ur responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Gerber v. Piergrossi*, 142 A.3d 854, 858 (Pa.Super. 2016) (quoting *Harris v. NGK North American, Inc.*, 19 A.3d 1053, 1063 (Pa.Super. 2011)).

- 10 -

The following principles inform our review. "Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment." *Truax v. Roulhac*, 126 A.3d 991, 997 (Pa.Super. 2015) (cleaned up). "Further, failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." *Id*. (cleaned up). "If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied." *Id*. (cleaned up).

We observe preliminarily that Dr. Mensah is the non-moving party who bore the burden of proof at trial. However, she offered no evidence that would give rise to a genuine issue of material fact. The essence of Dr. Mensah's breach of contract claim is that NBME "has a duty to cooperate in independent review to fully verify those scores[,]" but failed to do so. Appellant's brief at 11. She alleges that such a duty regarding score reporting arises from the Bulletin of Information ("BOI"), which provides in pertinent part:

> NOTE: The USMLE makes every effort to provide that your registration information is properly processed and that the Step examinations are properly prepared, administered, and scored. In the unlikely event that an error occurs in the preparation, processing, administration, or scoring of your USMLE examination or in the reporting of your USMLE scores, USMLE will make reasonable efforts to correct the error, if possible, or permit you either to retest at no additional fee or to receive a refund of the examination fee. These are the exclusive remedies available to examinees for errors in the registration process; in preparing,

- 11 -

processing or administering exams; or in determining or reporting scores.

Motion for Summary Judgment, 11/2/20, at 8-9 (quoting multiple exhibits, emphasis omitted).

Dr. Mensah makes no claim that the contract expressly provided for independent review of individual examinations and test questions. Rather, she alleges that such a duty is implied in the contract. She directs our attention to **Woolums v. National RV**, 530 F.Supp.2d 691 (M.D. Pa. 2008), a Uniform Commercial Code ("UCC") case, for the proposition that exclusive remedies clauses such as that contained in the BOI are not always enforced under Pennsylvania law. **See** 13 Pa.C.S. § 2719(b) (UCC section providing that where circumstances cause an exclusive or limited remedy to fail of its essential purpose, other remedies may be available). Without any analysis as to why this UCC provision is applicable herein, Dr. Mensah states that all she wants is "[a]ccess to true raw exam scores, analyzed scores and answer key for comparison" and to "investigate the validity and reliability of the testing procedures from administration to scoring of [the NBME]." Appellant's brief at 13 (quoting complaint *ad damnum* clause).

In support of her contention that she is entitled to such access, she relies upon **Hildebrant v. Educ. Testing Serv.**, 908 A.2d 657 (Md.App. 2006), a Maryland decision recognizing an implied duty of good faith and fair dealing in the contract between the Educational Testing Service ("ETS") and the test-taker. The Maryland intermediate appellate court reversed the trial

court's grant of summary judgment in favor of ETS after finding credibility issues and genuine issues of material fact as to whether good faith review had occurred. Dr. Mensah suggests that similar arguments can be made herein although she does not advance them by referencing evidence of record which created similar issues as to fact and credibility.

Dr. Mensah relies upon **Murray v. Educ. Testing Serv**., 170 F.3d 514, 516 (5th Cir. 1999), where independent review was an express remedy in the contract between the test-taker and test-administrator, in support of her claim that independent review should be deemed part of the contract in this case. She also cites **Langston v. ACT**, 890 F.2d 380 (11th Cir. 1989), holding that the testing agency fulfilled contractual duty by faithfully investigating the questionable test score, allowing the appellant to retake test, and offering to submit the dispute to arbitration. Dr. Mensah alleges that in the instant case, NBME has not demonstrated that it conducted a good faith investigation or offered to submit the dispute to arbitration, but instead, has frustrated independent review. Appellant's brief at 18. Moreover, she argues that the affidavit of Carol Morrison, Ph.D., which addressed rechecks of her scores, lacked details such as when the rechecks were done, by whom, whether it was manually performed or rescanned, and whether anyone double-checked the results. **Id**. at 18.

NBME counters that the terms of the BOI do not include or contemplate an independent review of NBME's scoring and Dr. Mensah did not provide any

evidence of a course of dealing or communications between the parties that would override the written contract. The remedy is a score recheck and that was performed in this instance. NBME additionally maintains that Dr. Mensah's reliance upon *Woolums* is misplaced as it was a federal case under the UCC involving the situation where the exclusive remedies failed of their essential purpose. NBNE contends that Dr. Mensah fails to develop any argument in support of the application of *Woolums* on the facts herein.

NBME argues further that the cases relied upon by Dr. Mensah involve allegations of misconduct or cheating, neither of which is implicated herein, and do not support her claim that under the terms of the contract herein she is entitled to independent review. NBME points out that its counsel produced "raw scores" for two exams to Dr. Mensah's counsel in response to her request for pre-complaint discovery. The documentation showed her name and USMLE Identification Number next to each entry on both the "Sequence Examinee Response" and the corresponding "Answer." *See* Mensah Deposition, 7/31/20, at 151-159 (Motion for Summary Judgment Exhibit E). Despite such evidence that her reported score was correct, NBME contends that Dr. Mensah simply persisted in her subjective belief that "those are not my scores, based on the awareness I have during the exams and the fact that I was passing and doing very well in assessments that I did." *Id*. at 141-42. Nonetheless, Dr. Mensah did not obtain an expert to review the methodology used to recheck the exam results, nor offer any evidence challenging that

methodology, although it was her burden to establish that her test results were incorrect and that the scoring was unreliable.

A review of the certified record reveals that it was undisputed that the BOI sets forth the remedies available to test-takers. In compliance with the BOI, NBME performed a recheck of Dr. Mensah's examinations as she requested.[2] It also provided her with her raw test answers and the correct test answers for comparison. There is no claim that NBME falsified the results. The evidence offered by NBME established that it followed its procedures, that its methodology was generally accepted and sound, and that it provided the remedies outlined in the contract to Dr. Mensah.

Dr. Mensah offers no analysis as to why the exclusive remedies clause in the BOI should not be enforced on the facts herein. We find *Woolums* inapplicable and unpersuasive. Furthermore, the cases cited by Dr. Mensah in support of her contention that there was an implied duty in the BOI to permit independent review suggest the contrary. All involved suits by test-takers accused of misconduct and the issue was whether the testing agencies acted in good faith in following the express remedies outlined in their testing

---

[2] NBME offered the affidavit of Carol Morrison Ph.D, the Principal Psychometrician at NBME. Motion for Summary Judgment, 11/2/20, at Exhibit A. She averred that psychometrics "is the theory and technique of psychological measurement, focusing on the measurement of knowledge and skills through testing." *Id*. at 1. She provided an overview of the examination, test security and scoring protocols, and a thorough review of Dr. Mensah's testing history. Dr. Morrison confirmed that score rechecks were conducted at Dr. Mensah's request and no errors were found in the scoring.

bulletins. In each case, the courts granted summary judgment finding no genuine issues of material fact regarding any breach of contract.[3]

In *Murray*, the student sued the Educational Testing Service for breach of contract when it withheld his SAT scores upon suspicion of cheating. The ETS advised Murray that he could avail himself of the remedies provided in the SAT registration bulletin which included either providing ETS with information supporting the validity of his scores, retaking the test, asking ETS to cancel the scores and obtain a refund, or requesting third-party review. The court found that there were no genuine issues of fact whether ETS breached its duty under the contract. It found that ETS "dutifully fulfilled its contract with Murray by following established procedures for determining the validity of questionable scores" and produced substantial evidence which justified its questioning of Murray's scores. *Id*. at 517. Summary judgment was affirmed.

The facts in *Langston*, *supra*, were similar. Based on the undisputed facts, the court found no genuine issue as to whether ACT breached its obligation to act in good faith under the contract. The court noted that ACT's investigation was extensive and that the testing agency had fulfilled its

---

[3] Dr. Mensah's reliance upon *Hildebrant v. Educ. Testing Serv.*, 908 A.2d 657 (Md.App. 2006), is misplaced as its holding that summary judgment was improperly entered was subsequently reversed by the Maryland Supreme Court. *See Hildebrant v. Educ. Testing Serv.*, 923 A.2d 34 (Md. 2007) (finding no genuine issues of material fact).

contractual duty by investigating a questionable score and then permitting the test-taker to avail himself of the contractual remedies to retake the test or submit his grievance to arbitration. Summary judgment was affirmed.

Our reading of the BOI establishes that NBME had no express contractual obligation to turn over proprietary test questions and answers to test-takers for independent review. Nor did Dr. Mensah offer any basis for finding such an implied duty. NBME demonstrated that it followed the procedures outlined in the BOI to recheck the validity of Dr. Mensah's scores. It also substantiated the reliability of its testing methodology. Dr. Mensah failed to produce any contrary evidence to raise a genuine issue of material fact whether NBME fulfilled its duties under the contract. Hence, summary judgment was properly granted on this contract claim.

Dr. Mensah's second claim seeks declaratory relief premised on the alleged breach of contract. She contends that "As a direct result of this breach in their duties, Appellant is unable to move forward in medical education and knowledge." Appellant's brief at 15. She acknowledges that "[c]ount II is clearly another breach of contract claim. It is very arguably cumulative of count I, but it is nevertheless a proper claim and should not be subject to the gist of the action doctrine." *Id*. at 17.

We agree that this contract claim is cumulative and offers no additional basis for relief. Furthermore, we have already concluded that Dr. Mensah failed to demonstrate a genuine issue of material fact whether NBME's

- 17 -

contractual obligations included an implied duty to permit independent review. Dr. Mensah faults NBME for failing to establish when the rechecks were performed, by whom, whether they were manual or machine scanned, and whether someone double checked the results. However, she bore the burden of proving that NBME breached its agreement to follow its procedures in good faith when the accuracy of test results was questioned, and she offered no evidence of breach. Nor did she avail herself of the discovery process to gather the evidence needed to meet that burden. Consequently, Dr. Mensah failed to produce any proof rebutting the evidence offered by NBME of the reliability of its scoring and recheck processes generally, or her test scores specifically. In short, Dr. Mensah failed to offer any evidence that would give rise to genuine issues of material fact that would preclude the entry of summary judgment.

For the foregoing reasons, we discern no error on the part of the trial court in granting NBME's motion for summary judgment, and no relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/1/2021